# In the United States Court of Federal Claims

No. 18-1568C

(E-Filed:  March 21, 2019)[1]

|  |  |
|---|---|
| LAND SHARK SHREDDING, LLC, | Post-Award Bid Protest; Alleged Proposal Evaluation Errors; Price Reasonableness of a Proposal Submitted by a Federal Supply Schedule Contractor; Preference for a Service-Disabled Veteran-Owned Small Business; Preliminary Injunction Request. |
| Plaintiff, |
| v. |
| THE UNITED STATES, |
| Defendant, |

Joseph A. Whitcomb, Denver, CO, for plaintiff.

Sean L. King, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Natica Chapman Neely, United States Department of Veterans Affairs, of counsel.

## OPINION AND ORDER

CAMPBELL-SMITH, Judge.

      This post-award bid protest is before the court on plaintiff's renewed application for a temporary restraining order (TRO) and motion for a preliminary injunction.  See ECF No. 20.  The court has reviewed the complaint, ECF No. 1; the administrative record, ECF No. 11; plaintiff's memorandum in support of its motion, ECF No. 20-1; the exhibits to plaintiff's memorandum, ECF Nos. 20-2 through 20-5; defendant's opposition

---

[1]     This opinion was issued under seal on March 1, 2019.  Pursuant to ¶ 2 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged.  The proposed redactions were acceptable to the court.  All redactions are indicated by brackets ([ ]).

brief, ECF No. 21; and, plaintiff's reply brief, ECF No. 22.  Oral argument was deemed unnecessary.  For the reasons set forth below, plaintiff's renewed TRO and preliminary injunction motion is **DENIED**.

I.    Background

    A.    Solicitation

The procuring agency here is the United States Department of Veterans Affairs (VA).  The competition that underlies this protest is for on-site document shredding and pill-bottle destruction at the Bruce W. Carter VA Medical Center in Miami, Florida, and other VA facilities in Florida.  ECF No. 11 at 285-347.  The solicitation for this firm, fixed-price Federal Supply Schedule (FSS) contract, id. at 309, 327, issued on August 30, 2018, id. at 285, with a closing date for receipt of proposals of September 21, 2018, id. at 469.  The contract would include one base year and four option years.  Id. at 289-93.

This competition is described in the solicitation as "a Service Disabled Veteran Owned Small Businesses (SDVOSB) set-aside with Small Business Set-aside -using a tiered or cascading order of precedence."  Id. at 345.  The tiers of cascading preferred business types are clearly delineated, beginning with SDVOSBs, then veteran-owned small businesses, then all other small businesses, then all other businesses.  Id.  Further, offerors were informed that "[i]f an award or a sufficient number of awards cannot be made at the first tier, evaluation of offers will proceed at the next lower tier until an award or a sufficient number of awards can be made."  Id.

The solicitation contained at least three other provisions of relevance to this protest.  First, the solicitation included a performance work statement.  Id. at 294-309.  Second, the solicitation cited a limitation on subcontracting regulation applicable to SDVOSB set-asides.  Id. at 323 (citing 13 C.F.R. § 125.6 (2018)).  Finally, the solicitation informed offerors that the agency would choose the "best value" proposal among "acceptable" proposals.  Id. at 345.

    B.    Offerors and Proposal Prices

Three offerors responded to the solicitation.  ECF No. 11 at 618.  The offerors were plaintiff, Land Shark Shredding, LLC (Land Shark or LSS), SafeGuard Document Destruction Inc. (SafeGuard), and [ ].  Id. at 278-79, 618.  According to the administrative record, Land Shark was the only first-tier offeror (SDVOSB), SafeGuard was a third-tier offeror (small business), and [ ] was a fourth-tier offeror (large business). Id. at 618.

For price evaluation purposes, Land Shark's proposal was determined to be the most expensive, at $2,819,101.20.  Id.  [ ]'s proposal was significantly less expensive than Land Shark's, at $[ ].  Id.  SafeGuard's proposal was slightly less expensive than

[ ]'s proposal, and much less expensive than Land Shark's, at $474,034.80.  <u>Id.</u> SafeGuard's proposal was also closest in price to the independent government cost estimate (IGCE) for the contract, which was $490,000.  <u>Id.</u> at 56, 617.  According to the VA's records, the IGCE was calculated using FSS published prices for document shredding services.  <u>Id.</u> at 56.  The court observes that Land Shark's price was more than five times as high as the prices proposed by the other offerors.

C.    Award Decision and Land Shark's Protest

SafeGuard's proposal was selected for award on September 26, 2018.  ECF No. 11 at 617.  On September 27, 2018, Land Shark was informed that its proposal had not been selected for award.  ECF No. 1 at 5.  The contract was awarded to SafeGuard on September 28, 2018.  ECF No. 11 at 625.

The decision not to award the contract to Land Shark was premised on the VA's determination that Land Shark's evaluated price of $2,819,101.20 was "not reasonable." <u>Id.</u> at 620.  In contrast, SafeGuard's price was found to be "fair and reasonable."  <u>Id.</u> Although both entities were considered to be qualified to perform the required services, SafeGuard's proposal was determined to be the "most advantageous to the Government." <u>Id.</u>

On Friday, September 28, 2018, Land Shark asked the VA's contracting specialist to explain how a SDVOSB could lose the contract to a small business that was not a SDVOSB.  <u>Id.</u> at 675.  The contracting specialist explained that if the SDVOSB's price was "found [to be] not reasonable," the VA could go to a lower-tier offeror for award.  <u>Id.</u> at 674.  On Saturday, September 29, 2018, Land Shark's CEO requested a "full debrief[ing]" from the VA regarding the contract award.  <u>Id.</u> at 678.

On Monday, October 1, 2018, the VA's contracting specialist and Land Shark's CEO discussed the award during a telephone conversation.  <u>Id.</u> at 744.  Land Shark's CEO apparently presented his concerns about the propriety of the award, and indicated that Land Shark would protest the award.  <u>Id.</u>  On October 9, 2018, Land Shark filed its protest in this court.

II.    Legal Standards

A.    Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2012)]:  a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  <u>Banknote Corp. of Am. v. United States</u>, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)).  Under this

standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure.  Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085-86 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)).  "The arbitrary and capricious standard applicable [in bid protests] is highly deferential."  Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief.  Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v. United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)).  The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question.  Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)).  Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'"  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

B.     Injunctive Relief

As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers:  (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).  The standard for a

preliminary injunction is the same, except that likelihood of success on the merits -- instead of actual success on the merits -- must be shown by the plaintiff.  Id. at 1229. Further, the standard for the issuance of a temporary restraining order is the same as that for a preliminary injunction.  See, e.g., Munilla Constr. Mgmt., LLC v. United States, 130 Fed. Cl. 131, 135 (2016).

III.    Analysis

There were three issues presented by plaintiff's complaint for the court's consideration.  Plaintiff argued, first, that its proposal should not have been subjected to a test for price reasonableness, because Land Shark's prices as an FSS contractor are presumptively fair and reasonable.  ECF No. 1 at 7-8.  Plaintiff argued, second, that Land Shark's SDVOSB status was not given proper priority by the VA.  Id. at 9-11.  Third, plaintiff argued that SafeGuard cannot comply with the limitation on subcontracting provision in the solicitation, rendering the VA's award to SafeGuard arbitrary, capricious, and contrary to law.  Id. at 11-12.

In plaintiff's renewed TRO and preliminary injunction motion, a somewhat different challenge to the award to SafeGuard is presented in three separately identified sub-sections of the brief.[2]  First, plaintiff challenges the agency's evaluation of proposals. ECF No. 20-1 at 11-13.  Second, the agency's determination that Land Shark's price was unreasonable is alleged by plaintiff to be arbitrary, capricious and contrary to law.  Id. at 13-16.  Third, plaintiff contends that the award to a "non-SDVOSB" was improper.  Id. at 16-19.  The court addresses each of these contentions in turn,[3] and briefly considers the question of whether Land Shark has shown its entitlement to preliminary injunctive relief at the end of this opinion.

---

[2]     The court has also considered the arguments contained in plaintiff's reply brief. The court agrees with plaintiff that Land Shark has standing to bring this bid protest, see ECF No. 22 at 3-7, but rejects plaintiff's contention that Land Shark has shown likelihood of success on the merits of its challenge to the award to SafeGuard, or that plaintiff is entitled to preliminary injunctive relief.

[3]     The court restricts its analysis of the merits of this protest to plaintiff's contentions set forth in the "merits" section of its brief, identified in the brief's outline as section IV(A)(1)(a)-(c).  ECF No. 20-1 at 11-19.  This section of the brief presents plaintiff's most substantive arguments supported by citations to caselaw.  To the extent that other sections of plaintiff's brief contain additional criticism of the agency's award decision, those allegations of error are cursory and unpersuasive.  Cf. id. at 7 (alleging that the VA violated 13 C.F.R. § 125.6 (2018) (Limitations on Subcontracting), but providing no explanation for this assertion).

A.     Alleged Proposal Evaluation Errors

The court has attempted to discern the evaluation error, or errors, that plaintiff seeks to bring to the court's attention in this sub-section of plaintiff's motion.  See ECF No. 20-1 at 11-13.  There is ample reference to unequal treatment of offerors, but no explanation of the unequal treatment the court should focus on here.  There is ample reference to the principle that offerors must be evaluated according to the criteria set forth in a solicitation, but no discussion of how the VA violated this rule.

Instead, plaintiff offers only a summary of vague and unsubstantiated allegations of procurement errors, which are set forth in one sentence, without supporting citations to the administrative record.  This sentence reads:

> Thus, the VA violated the terms of the Solicitation by eliminating LSS from competition based upon an erroneous determination that LSS's price was unreasonable and imbalanced, by awarding the Contract to an offeror that is not a SDVOSB, and by ignoring a likely violation of the limitation of subcontracting regulation.

ECF No. 20-1 at 12.  This sentence offers a preview of two upcoming sub-sections of plaintiff's motion before the court and alludes to an unexplained violation of regulatory limitations on subcontracting.  Plaintiff's general and vague allegations of evaluation error, in this sub-section of its brief, fail to persuade the court that the agency's award decision was flawed.  Plaintiff's renewed request for a TRO and preliminary injunction cannot be sustained on this ground.

B.     Price Reasonableness Evaluation by the VA

This sub-section of plaintiff's brief is not a model of clarity.  As many as five different topics appear to be addressed, although the thread of plaintiff's arguments on each of these topics is difficult to discern.  The court summarizes each of plaintiff's contentions as to the flaws in the VA's price evaluation of proposals, and also summarizes the government's counter-arguments addressing each of these topics.  The court addresses each of plaintiff's topics, in turn.

1.     The Per Pound Shredding Price Used in the IGCE Is Allegedly Not an Appropriate Unit of Measure for Evaluating Offerors' Prices

According to plaintiff, most FSS contractors "don't even list per-pound prices" in their price lists for document shredding services.  ECF No. 20-1 at 13 (citing ECF No. 20-2 at 6-34).  Thus, in plaintiff's view, an IGCE that merely multiplies an estimate of 700,000 pounds of paper per year, by a price per pound of $.14, "has no rational basis."  Id.

Defendant argues that the IGCE is rational, because it was based on published FSS per pound shredding prices, and because two of the three offerors submitted prices in line with the IGCE.  ECF No. 21 at 18-20.  The court must agree with the government that plaintiff has not shown that the methodology used to create the IGCE lacked a rational basis.  Indeed, the per pound price used in the IGCE is supported by some of the price lists attached as exhibits to plaintiff's motion, which offer per pound shredding prices at or near the price used in the IGCE.  See ECF No. 20-2 at 9, 14, 24, 27-30.  The court cannot agree with plaintiff that the per pound price used in the IGCE was irrational.

2.      The IGCE's Pounds Per Year Estimate Allegedly Underestimates the Work Required under the Contract

Plaintiff contends that a better estimate of shredding services under the contract would be closer to 1,548,300 pounds per year, not 700,000 pounds per year.  ECF No. 20-1 at 14.  Plaintiff's figure is derived from the weight capacity for various shredding containers at VA facilities.  Id. at 13-14.  Defendant does not respond specifically to this contention, other than to note that the IGCE was in line with two of the three offerors' prices.  ECF No. 21 at 19.

The court is not persuaded by plaintiff's "container capacity" calculation that the IGCE was irrational.  The solicitation and the agency's answers to bidder questions discussed the number of shredding containers, and the frequency of service visits to these containers, but did not indicate that container capacity and service frequency would directly correspond with the amount, measured in pounds, of shredding required.  ECF No. 11 at 285-347, 465-67, 470-71.  Further, the predecessor contract to this one projected that 500,000 pounds of shredding would occur each year of the contract, and modifications to that contract noted that sometimes less shredding was required.  See id. at 15-18, 42-54.  Land Shark was informed that the current contract would involve the same level of effort as the predecessor contract.  Id. at 467.  The record before the court does not support plaintiff's contention that the 700,000 pounds per year estimate in the IGCE was irrational.

3.      Alleged Flaw in the Evaluation of Contract Line Item Number (CLIN) 002

Plaintiff contends that there is a flaw in the price evaluation of CLIN 002, which required destruction of "special documents/Pill Bottles."  ECF No. 20-1 at 14 (citing ECF No. 11 at 289-91).  As a threshold matter, plaintiff contends that the solicitation was ambiguous regarding this CLIN:  "It isn't clear what the VA wanted bidders to price here."  Id.; see ECF No. 22 at 10 (stating that "there was obviously some confusion" as to CLIN 002).  Plaintiff also complains that the awardee's price was viewed as reasonable, even though SafeGuard priced this CLIN at $0.00.  ECF No. 20-1 at 14.

7

As defendant points out, if plaintiff believed there was a patent error in the solicitation regarding CLIN 002, such a challenge should have been brought pre-award, because such a challenge is untimely in a post-award bid protest. ECF No. 21 at 20. Moreover, as defendant also points out, Land Shark received instruction as to the pricing of CLIN 002, which stated that a price of $0.00 was acceptable for this CLIN. See ECF No. 11 at 465. SafeGuard was not treated differently than Land Shark when it priced CLIN 002 at $0.00. Plaintiff has not shown that the VA's price evaluation of the CLINs in the offerors' proposals was irrational.

> 4.    The Comparison of a SDVOSB's price to a Non-SDVOSB's Price Is Allegedly Improper

Plaintiff suggests, with minimal explanation, that the VA could not determine the reasonableness of Land Shark's price through a comparison with non-SDVOSB prices. The court reproduces the entirety of this argument, as follows:

> The VA also based its evaluation of LSS's bid on a comparison of LSS's prices to the other non-SDVOSB offerors. This is not a fair and reasonable comparison, and it totally negates the value of set-asides. It also ignores the U.S. Supreme Court's holdings in the Kingdomware case, which is discussed in detail below. Comparison of SDVOSB bids to non-veteran and other than small business concerns also violates Congress' express policy regarding SDVOSB assistance programs. "The purpose of the Service-Disabled Veteran-Owned Small Business Program is to provide Federal contracting assistance to service-disabled veteran-owned small business concerns." FAR § 19.1401(b).

ECF No. 20-1 at 15 (citing generally to Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969 (2016)).

Defendant notes, first, that the comparison of quotes with other quotes received was a methodology established by the solicitation, which expressly noted that several tiers of businesses, including SDVOSBs, would be considered to be eligible offerors. ECF No. 21 at 18 (citing ECF No. 11 at 345). Thus, defendant argues, plaintiff should have raised its objection to the comparison of the offerors' quotes in a pre-award protest, not in a post-award protest. Id. at 18-19 (citations omitted). The court is not certain that plaintiff's challenge is untimely as raised, but need not resolve that question. More important, in the court's view, are the merits of plaintiff's argument, which the government also addresses.

The court agrees with the government that plaintiff has not cited any authority which supports its position. Kingdomware does not address price comparisons, in general, or the specific question of how the VA should determine that a SDVOSB's prices are fair and reasonable. The Federal Acquisition Regulation (FAR) provision cited

8

by plaintiff is a policy statement that does not regulate procedures for the price evaluation of proposals in procurements such as this one.  In sum, plaintiff objects to the price comparison conducted by the VA here because it does not do enough, in plaintiff's view, to secure government contracts for SDVOSBs.  That is a policy argument, unmoored from statute or regulation.  Without more, that policy argument is an insufficient ground for this court to invalidate a procurement decision of a federal agency.  See, e.g., Artuz v. Bennett, 531 U.S. 4, 10 (2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them."); Precise Sys., Inc. v. United States, 120 Fed. Cl. 586, 602 n.18 (2015) (stating that this "court has no authority to compel [a] reconciliation" of conflicting procurement regulations); Colonial Press Int'l, Inc. v. United States, 113 Fed. Cl. 497, 524 (2013) (stating that even "a positive policy argument" cannot provide a reason to contravene a long-standing statutory interpretation), aff'd, 788 F.3d 1350 (Fed. Cir. 2015); McKing Consulting Corp. v. United States, 78 Fed. Cl. 715, 722 n.12 (2007) ("Regardless of the merits of the[] policy argument, th[is] Court is not empowered to make [procurement] law.").

> 5.   The VA's Price Evaluation of Land Shark's Proposal Is Allegedly Improper under FAR 8.404(d), 48 C.F.R. § 8.404(d) (2017), and FAR 8.405-2(d), 48 C.F.R. § 8.405-2(d) (2017)

This section of plaintiff's brief is difficult to summarize, so the court quotes plaintiff's argument in full:

> The VA has argued that FAR 8.405-2(d) requires the contracting officer to make an independent evaluation of LSS's price reasonableness.  The Plaintiff disagrees with that argument because in this case LSS was asked to bid prices per bin, not hourly labor rates.  In practical terms, what 8.405-2(d) is saying is that hourly labor rates for a given employee may be fair and reasonable as listed on the FSS (e.g. Engineer I, $60.00/hour), but the Government must still evaluate the labor categories that will perform specific tasks and the labor mix for the entire project in order to determine whether the total bid price is reasonable.  See Advanced Tech. Sys., Inc., B-296493.6, at page 9, (Oct. 6, 2006).  LSS's per-bin prices on [the FSS price-list] are reasonable per 48 C.F.R. § 8.404(d) and the VA's analysis of reasonable pricing should have stopped at that point.  There is no legal or regulatory basis for further evaluation of LSS's price reasonableness.

ECF No. 20-1 at 15-16.  Thus, plaintiff relies on both FAR 8.404(d) and FAR 8.405-2(d) to argue that the VA was not permitted to conduct a price reasonableness analysis of Land Shark's proposal.

Defendant has a number of counter-arguments which are persuasive on this topic. First, as the government notes, simply because FAR 8.404(d) states that agencies are not

required, generally, to inquire into the reasonableness of FSS prices, that regulation does not forbid them from doing so.  ECF No. 21 at 13.  Second, defendant suggests that in this type of FSS procurement, which contains a statement of work, a price evaluation was required by FAR 8.405-2(d), as referenced in FAR 8.404(d).  ECF No. 21 at 13-14.  The court agrees with both of these arguments.  The government then proceeds to parse a number of related regulatory provisions to show that the VA was permitted to assess the reasonableness of Land Shark's overall price, in order to ensure that the best value proposal was obtained.  Id. at 14-15.  The government concludes that "Land Shark's unsupported allegations rest entirely on a disingenuous reading of § 8.404 which ignores the express requirement to independently evaluate the reasonableness of quoted FSS prices when a statement of work is required, and to select FSS quotes which provide the best value to the Government."  Id. at 16.

The court agrees with defendant that, under the FAR and the terms of the solicitation, the VA was permitted to conduct an independent assessment of the reasonableness of Land Shark's overall price.  The court also finds that the VA's determination that Land Shark's price was not reasonable is adequately supported by the record before the court.  The agency's price evaluation therefore survives this court's review under both the arbitrary and capricious standard and the violation of procurement regulations standard.

C.      Cascading Tiers of Preference

The final protest ground addressed in plaintiff's motion is a multi-pronged attack on the agency's use of a cascading tier of set-asides.  Fundamental to plaintiff's argument is the assertion that Land Shark's prices were and are reasonable.  See ECF No. 20-1 at 16 (stating that "the VA should have concluded that [Land Shark's General Service Administration (GSA)] Schedule prices were reasonable without further analysis per 48 C.F.R. § 8.404(d) and then awarded the contract to LSS as a fully qualified first-tier SDVOSB with a reasonable price"); id. at 17 ("The fact of this matter is that LSS's bid price was fair and reasonable per 48 C.F.R. § 8.404(d)."); id. at 19 ("The VA acted arbitrarily and capriciously and violated regulations and case law when it determined that LSS's bid price was not reasonable and imbalanced, and when it awarded the contract to [SafeGuard] . . . .").  But as the court has found, there was no error in the agency's determination that Land Shark's price was unreasonable.  Thus, Land Shark's overall argument that the award to SafeGuard was improper, under various authorities, suffers from an inaccurate factual premise and must be rejected.

The individual components of Land Shark's argument regarding the priorities due the sole SDVOSB offeror in this procurement are also unsound.  The principal authorities relied upon by plaintiff are as follows:  (1) the Supreme Court's decision in Kingdomware; (2) this court's decision in Greenleaf Construction Co. v. United States, 67 Fed. Cl. 350 (2005) (Greenleaf); (3) Veterans Affairs Acquisition Regulation (VAAR)

852.219-10, 48 C.F.R. § 852.219-10 (2017); and (4) FAR 19.1405(c), 48 C.F.R. § 19.1405(c) (2017).[4]  None of these authorities is persuasive.

        1.    <u>Kingdomware</u>

Plaintiff argues that "[t]he VA's application of its tiered and cascading order of precedence award process violated . . . the Supreme Court's ruling in the <u>Kingdomware</u> case." ECF No. 20-1 at 17.  Plaintiff quotes a passage of the Supreme Court's decision to support plaintiff's assertion that once the VA "satisfied the rule of two . . . , it was required to award the contract to LSS." <u>Id.</u> at 18 (quoting Kingdomware, 136 S. Ct. at 1976-77).  Plaintiff's reliance on <u>Kingdomware</u> is unavailing.

The Rule of Two discussed in <u>Kingdomware</u> is found at 38 U.S.C. § 8127(d) (2012).  According to the Supreme Court,

> The Act's "Rule of Two," at issue here, provides that the Department [of Veterans Affairs] "shall award" contracts by restricting competition for the contract to service-disabled or other veteran-owned small businesses.  To restrict competition under the Act, the contracting officer must reasonably expect that at least two of these businesses will submit offers and that "the award can be made at a fair and reasonable price that offers best value to the United States."

<u>Kingdomware</u>, 136 S. Ct. at 1973-74 (citing 38 U.S.C. § 8127(d)).  The <u>Kingdomware</u> decision shows that the Rule of Two applies to FSS contracts. <u>Id.</u> at 1979.  Although the Supreme Court required a Rule of Two analysis for FSS acquisitions, it is important to note that the Court did not specify the manner in which the Rule of Two search for veteran-owned contractors would be accomplished. <u>Id.</u> at 1977 n.4.

Although plaintiff argues that the VA "satisfied" the Rule of Two, ECF No. 20-1 at 18, that statement is only partly correct.  The VA in this procurement conducted a Rule of Two analysis, as required by <u>Kingdomware</u>, but the VA did not find that this procurement could be entirely set aside for veteran-owned businesses. <u>See</u> ECF No. 11 at 345, 620.  As defendant notes, the solicitation clearly indicated that, in addition to veteran-owned small businesses and SDVOSBs, small businesses and large businesses were welcome to apply.  ECF No. 21 at 18.  The court sees no violation of <u>Kingdomware</u>

---

[4]     Plaintiff also cites generally to an article in a government contracts journal.  ECF No. 20-1 at 16-17.  As the court noted when it denied plaintiff's initial TRO and preliminary injunction motion, a general citation to an entire article, with no explanation as to the significance of specific passages in the article to the analysis required in this case, is unhelpful to the court.  ECF No. 18 at 2 & n.1 (order).

in the agency's Rule of Two analysis, its use of a cascading system of preferences placing SDVOSBs in the first tier, or in the selection of SafeGuard as contract awardee.

### 2.   Greenleaf

Plaintiff relies on Greenleaf because that decision criticized a tiered-preference system used in another procurement.  ECF No. 20-1 at 16-17, 19.  The Greenleaf decision is not particularly helpful here, however, because the preference system at issue in that case was not the one set forth in § 8127(d).  See Greenleaf, 67 Fed. Cl. at 360 (citing the small business Rule of Two set forth in FAR 19.502-2(b), 48 C.F.R. § 19.502-2(b) (2017)).  Thus, Greenleaf is not "a case directly on point," as plaintiff contends.  ECF No. 20-1 at 16.

To the extent that Greenleaf articulates the general principle that a cascading set of tiered preferences cannot contravene procurement regulations, the court would agree. See 67 Fed. Cl. at 356 ("While the justifications for cascading may be legitimate, they cannot lead to a procedure that violates acquisition regulations.").  Plaintiff argues that the cascading set of tiered preferences used by the VA in this procurement violated this statement of the principle in Greenleaf:  "[A]warding the contract to a non-SDVOSB bidder by application of the tiered and cascading order of precedence award process would violate acquisition regulations, which take precedence over the tiered and cascading order of preference per the Greenleaf case."  ECF No. 20-1 at 19 (citing Greenleaf, 67 Fed. Cl. at 356).  Unfortunately for plaintiff, the VA's cascading tier of preferences has not been shown to violate any procurement regulations.

### 3.   VAAR 852.219-10

Plaintiff notes, first, that the "full text" of VAAR 852.219-10 was included in the solicitation.  ECF No. 20-1 at 17 (citing ECF No. 11 at 323-24).  Plaintiff also notes that the title of VAAR 852.219-10 is "Notice of Total Service-Disabled Veteran-Owned Small Business Set-Aside."  Id.  However, as defendant notes, this solicitation was not a total set-aside for SDVOSBs, because the agency's Rule of Two analysis was inconclusive as to the appropriateness of proceeding with this FSS acquisition as a total SDVOSB set-aside.[5]  ECF No. 21 at 17-18.  Defendant argues, further, that plaintiff's

---

[5]      In plaintiff's reply brief, a new argument is raised regarding the SDVOSB set-aside nature of this procurement.  ECF No. 22 at 14.  Plaintiff was specifically warned not to raise new arguments in its reply brief, as it had done before in an earlier round of briefing.  See ECF No. 18 at 2.  Plaintiff's new argument, based on notations on the solicitation's "Form 1449," is deemed to be waived.  See, e.g., Arakaki v. United States, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete." (citing Novosteel SA v. United States, 284 F.3d 1261, 1274 (Fed. Cir. 2002); Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 467 (1999))).  Even if this argument were not

opportunity to challenge the cascading tier of preferences, because it was not a total SDVOSB set-aside, was pre-award, not post-award. Id. at 18.

The court agrees with defendant's analysis of the solicitation, with defendant's contention that the cascading preferences aspect of the procurement did not offend VAAR 852.219-10, and with defendant's assertion that plaintiff's challenge to the solicitation's cascading tiers of preferences is untimely.  It appears that VAAR 852.219-10 is routinely inserted into solicitations where SDVOSBs will be given highest preference, through a system of cascading tiers of preferences, and where the procurement will not be a total set-aside for SDVOSBs.  See 48 C.F.R. §§ 819.7004, 819.7009 (2017).  Moreover, if there was, indeed, a patent discrepancy between VAAR 852.219-10 and the cascading tiers of preferences set forth in the solicitation, plaintiff should have protested that patent error before award, not in a post-award protest.  See, e.g., Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.").  For all of the above reasons, plaintiff's challenge to the award to SafeGuard must be rejected, because no violation of VAAR 852.219-10 has been shown.

### 4.    FAR 19.1405

It is unclear whether FAR 19.1405 applies to this procurement.  This regulation is not mentioned in the solicitation, and by its language, appears to refer to total SDVOSB set-aside procurements conducted by federal agencies, not cascading tiers of preferences procurements conducted by the VA, in particular.  Defendant argues that FAR 19.1405 is not applicable here, but that even if it were, the VA is nonetheless permitted to not award to a SDVOSB under this regulation when the price offered is not fair and reasonable. ECF No. 21 at 17 n.1 (citing FAR 19.1405(c)).

The equivalent VAAR provision is found at VAAR 819.7005, 48 C.F.R. § 819.7005 (2017), which would appear to replace FAR 19.1405 for VA procurements. See VAAR 801.104(b), 48 C.F.R. § 801.104(b) (2017) ("The FAR applies to VA acquisitions except as provided in the VAAR.").  The VAAR regulation states that "[i]f the contracting officer receives only one acceptable offer at a fair and reasonable price from an eligible SDVOSB concern in response to a SDVOSB set-aside, the contracting officer should make an award to that concern."  48 C.F.R. § 819.7005(c) (emphasis

---

waived, it is unpersuasive, because the solicitation form cited by plaintiff is not marked as a 100% SDVOSB set-aside. See ECF No. 11 at 285.

added).  Thus, under VAAR 819.7005(c), when the VA conducts a SDVOSB set-aside procurement, a SDVOSB does not receive a contract award simply because it is the only SDVOSB participating in the procurement, it must also submit an offer that has a fair and reasonable price.  48 C.F.R. § 819.7005(c).  The court must conclude, then, that even if this were a total SDVOSB set-aside, which it is clearly not, Land Shark would not receive the award under VAAR 819.7005 because its price was not reasonable.  The court sees no violation of applicable procurement regulations which govern SDVOSB set-asides in the VA's award to SafeGuard.

D.    Preliminary Injunctive Relief Not Warranted

Plaintiff has not shown likelihood of success on the merits of its protest.  This failure weighs heavily against the issuance of a preliminary injunction.  See, e.g., FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993) ("Absent a showing that a movant is likely to succeed on the merits, we question whether the movant can ever be entitled to a preliminary injunction unless some extraordinary injury or strong public interest is also shown.").  Indeed, the Federal Circuit has held that an inability to show likelihood of success on the merits is dispositive.  See Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (stating that "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits") (citation and footnote omitted).  The court briefly discusses the other injunctive relief factors.

Although the court agrees with plaintiff that the SDVOSB program is an important tool that serves the public interest, ECF No. 22 at 17-18, the court cannot agree that an injunction is required here to uphold the public interest targeted by that program.  Procurement efficiency and reasonable prices for contract services are also in the public interest.  Under the facts of this case, the greater public interest would be served by not enjoining a contract award to the lowest-priced offeror, when the highest-priced offeror, offering the same services for more than five times the price, has not shown that the award was improper.  See Wind Tower Trade Coal. v. United States, 741 F.3d 89, 101 (Fed. Cir. 2014) (agreeing with the lower court that "no strong public interest [in the issuance of a preliminary injunction] was demonstrated" when the movant had failed to show likelihood of success on the merits).

The court also finds that irreparable harm to plaintiff is not established because the protestor has not shown likelihood of success on the merits.  See Akal Sec., Inc. v. United States, 87 Fed. Cl. 311, 319 (2009) (stating that the "strength or weakness of [the protestor's] merits arguments largely determines the court's view of irreparable injury").

Finally, there would be more harm to the VA and SafeGuard flowing from an injunction of contract performance than there would be to plaintiff in the absence an injunction, where plaintiff has not shown likelihood of success on the merits.  Contract performance began even before this protest was filed, and SafeGuard is already five

14

months into performance of shredding services.  ECF No. 1 at 5; ECF No. 11 at 625-27; ECF No. 21 at 22.  If Land Shark were to prevail in its protest, an orderly transition to a new contract award would mitigate any harm that Land Shark would experience in the absence of an injunction.

When all four of the injunctive relief factors are considered, plaintiff's renewed request for a TRO and a preliminary injunction must be **DENIED**.

IV.    Conclusion

Accordingly,

(1)    Plaintiff's renewed temporary restraining order and preliminary injunction motion, ECF No. 20, is **DENIED**;

(2)    On or before **March 22, 2019**, the parties shall **CONFER** and **FILE** a **proposed redacted version** of this opinion, with any competition-sensitive or otherwise protectable information blacked out; and,

(3)    On or before **March 22, 2019**, the parties shall **CONFER** and **FILE** a **joint status report** proposing the next steps toward a resolution of this litigation.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge