# In the United States Court of Federal Claims

No. 18-1568C

(E-Filed: October 21, 2019)[1]

| | |
|---|---|
| LAND SHARK SHREDDING, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) | Post-Award Bid Protest; Preference for a Service-Disabled Veteran-Owned Small Business; Price Reasonableness Inquiry; Limitations on Subcontracting; Permanent Injunction Request. |

Joseph A. Whitcomb, Denver, CO, for plaintiff.

Sean L. King, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Natica Chapman Neely, United States Department of Veterans Affairs, of counsel.

OPINION

CAMPBELL-SMITH, Judge.

This post-award bid protest is before the court on the parties' cross-motions for judgment on the administrative record. The court has reviewed the complaint, ECF No. 1; the administrative record (AR), ECF No. 11; plaintiff's motion for judgment on the AR, ECF No. 29; defendant's cross-motion for judgment on the AR, ECF No. 32; plaintiff's response/reply brief, ECF No. 33; and, defendant's reply brief, ECF No. 34.

---

[1]  This opinion was issued under seal on October 16, 2019. Pursuant to ¶ 4 of the ordering language, the parties were invited to identify source selection, proprietary or confidential material subject to deletion on the basis that the material was protected/privileged. The redactions jointly proposed by plaintiff and the government were acceptable to the court. All redactions are indicated by brackets ([ ]).

Oral argument was deemed unnecessary. For the reasons set forth below, plaintiff's motion for judgment on the AR is **DENIED**, and defendant's motion for judgment on the AR is **GRANTED**.

I.   Background[2]

   A.   Solicitation

The procuring agency here is the United States Department of Veterans Affairs (VA). The competition that underlies this protest is for on-site document shredding and pill-bottle destruction at the Bruce W. Carter VA Medical Center in Miami, Florida, and other VA facilities in Florida. ECF No. 11 at 285-347. The solicitation for this firm, fixed-price Federal Supply Schedule (FSS) contract, id. at 309, 327, issued on August 30, 2018, id. at 285, with a closing date for receipt of proposals of September 21, 2018, id. at 469. The contract would include one base year and four option years. Id. at 289-93.

This competition is described in the solicitation as "a Service Disabled Veteran Owned Small Businesses (SDVOSB) set-aside with Small Business Set-aside -using a tiered or cascading order of precedence." Id. at 345. The tiers of cascading preferred business types are clearly delineated, beginning with SDVOSBs, then veteran-owned small businesses (VOSBs), then all other small businesses, then all other businesses. Id. Further, offerors were informed that "[i]f an award or a sufficient number of awards cannot be made at the first tier, evaluation of offers will proceed at the next lower tier until an award or a sufficient number of awards can be made." Id.

The solicitation contained at least three other provisions of relevance to this protest. First, the solicitation included a performance work statement. Id. at 294-309. Second, the solicitation cited a limitation on subcontracting regulation applicable to SDVOSB set-asides. Id. at 323 (citing 13 C.F.R. § 125.6 (2018)). Finally, the solicitation informed offerors that the agency would choose the "best value" proposal among "acceptable" proposals. Id. at 345.

   B.   Offerors and Proposal Prices

Three offerors responded to the solicitation. ECF No. 11 at 618. The offerors were plaintiff, Land Shark Shredding, LLC (Land Shark), SafeGuard Document Destruction Inc. (SafeGuard), and [ ]. Id. at 278-79, 618. According to the AR, Land Shark was the only first-tier offeror (SDVOSB), SafeGuard was a third-tier offeror (small business), and [ ] was a fourth-tier offeror (large business). Id. at 618.

---

[2]   Much of this section was also presented in the court's prior opinion denying plaintiff's motion for a temporary restraining order (TRO). See ECF No. 26 at 2-3 (public redacted version). It is included again here for context.

2

For price evaluation purposes, Land Shark's proposal was determined to be the most expensive, at $2,819,101.20. Id. [ ]'s proposal was significantly less expensive than Land Shark's, at $[ ]. Id. SafeGuard's proposal was slightly less expensive than [ ]'s proposal, and much less expensive than Land Shark's, at $474,034.80. Id. SafeGuard's proposal was also closest in price to the independent government cost estimate (IGCE) for the contract, which was $490,000. Id. at 56, 617. According to the VA's records, the IGCE was calculated using FSS published prices for document shredding services. Id. at 56. The court observes that Land Shark's price was more than five times higher than the prices proposed by the other offerors.

C. Award Decision and Land Shark's Protest Filed

SafeGuard's proposal was selected for award on September 26, 2018. ECF No. 11 at 617. On September 27, 2018, Land Shark was informed that its proposal had not been selected for award. ECF No. 1 at 5. The contract was awarded to SafeGuard on September 28, 2018. ECF No. 11 at 625.

The decision not to award the contract to Land Shark was premised on the VA's determination that Land Shark's evaluated price of $2,819,101.20 was "not reasonable." Id. at 620. In contrast, SafeGuard's price was found to be "fair and reasonable." Id. Although both entities were considered to be qualified to perform the required services, SafeGuard's proposal was determined to be the "most advantageous to the Government." Id.

On Friday, September 28, 2018, Land Shark asked the VA's contracting specialist to explain how a SDVOSB could lose the contract to a small business that was not a SDVOSB. Id. at 675. The contracting specialist explained that if the SDVOSB's price was "not a reasonable price for the Government," the VA could go to a lower-tier offeror for award. Id. at 674. On Saturday, September 29, 2018, Land Shark's CEO requested a "full debrief[ing]" from the VA regarding the contract award. Id. at 678.

On Monday, October 1, 2018, the VA's contracting officer and Land Shark's CEO discussed the award during a telephone conversation. Id. at 744. Land Shark's CEO apparently presented his concerns about the propriety of the award, and indicated that Land Shark would protest the award. Id. On October 9, 2018, Land Shark filed its protest in this court.

D. Two Rounds of Briefing for Plaintiff's Requests for a Temporary Restraining Order, Which Were Both Denied

An expedited briefing schedule for plaintiff's request for a temporary restraining order (TRO) was established by the court. See ECF No. 7 (order). Due to inadequacies in the briefing of plaintiff's initial TRO motion, ECF No. 4, that motion was denied, ECF No. 18 (order). The court then set a briefing schedule for plaintiff's renewed TRO

3

motion. Id. The court's opinion denying plaintiff's renewed TRO motion, ECF No. 20, issued under seal on March 1, 2019, ECF No. 23. A redacted, public version of the opinion issued on March 21, 2019. See ECF No. 26.

  E. Briefing of Motions for Judgment on the AR

The reported opinion denying plaintiff's renewed request for a TRO discusses many of the legal issues that will be addressed, again, in this opinion. See Land Shark Shredding, LLC v. United States, 142 Fed. Cl. 301 (2019). In the opinion denying plaintiff's request for a TRO, the court inquired as to the parties' views regarding the "next steps toward a resolution of this litigation." ECF No. 26 at 15. The parties proposed a briefing schedule for the filing of cross-motions for judgment on the AR pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 24 (joint status report). That briefing schedule was adopted by the court. See ECF No. 27 (order). The parties' cross-motions are now ripe for decision.

II. Legal Standards

  A. Judgment on the AR

RCFC 52.1(c) provides for judgment on the administrative record. To review a motion, or cross-motions, under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record. Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005). The court must make factual findings where necessary. Id. The resolution of RCFC 52.1(c) cross-motions is akin to an expedited trial on the paper record. Id.

  B. Bid Protest Standard of Review

As the United States Court of Appeals for the Federal Circuit has stated, "the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1350-51 (Fed. Cir. 2004) (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir. 2000)). Under this standard, a procurement decision may be set aside if it lacked a rational basis or if the agency's decision-making involved a clear and prejudicial violation of statute, regulation or procedure. Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). "The arbitrary and capricious standard applicable [in bid protests] is highly deferential." Advanced Data Concepts, 216 F.3d at 1058.

De minimis errors in the procurement process do not justify relief. Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 1000 (Fed. Cir. 1996) (citing Andersen Consulting v.

United States, 959 F.2d 929, 932-33, 935 (Fed. Cir. 1992)).  The bid protest plaintiff bears the burden of proving that a significant error marred the procurement in question. Id. (citing CACI Field Servs., Inc. v. United States, 854 F.2d 464, 466 (Fed. Cir. 1988)). Examples of arbitrary and capricious agency action include "when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (alteration in original).  The court will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974) (citation omitted).

"'If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations.'"  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).  If the agency's procurement decision was arbitrary or capricious, the court proceeds to the issue of prejudice to the protestor.  Bannum, 404 F.3d at 1351.  If the protestor can show that there was a substantial chance that it would have won the contract award but for the procurement errors of the agency, relief may be granted because prejudicial error has been established.  Id. at 1353 (citations omitted).

   C.   Injunctive Relief

In the post-award context, if both significant error and prejudice are established by the protestor, the court next determines whether the protestor is entitled to a permanent injunction of the contract award.  See, e.g., Precision Asset Mgmt. Corp. v. United States, 135 Fed. Cl. 342, 360 (2017) (enjoining contract performance beyond the current option year, after the protestor established significant error, prejudice, and its entitlement to injunctive relief).  As the Federal Circuit has held:

> In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief.

PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987)).

III.   Analysis

There are five questions presented in plaintiff's motion for judgment on the AR.[3] ECF No. 29 at 7-8.  The first three all address, in various ways, the fact that Land Shark is a SDVOSB and the contract award did not go to a SDVOSB.  Id.  The fourth question focuses on the agency's price reasonableness determination.  Id. at 8.  The fifth question examines whether the agency properly considered the limitation on subcontracting applicable to this procurement when it found that SafeGuard was a responsible offeror. Id.  The court will address each of these questions in turn.

A.   The Rule of Two

Plaintiff's first argument discusses the "Rule of Two," which, as explained below, is found in 38 U.S.C. § 8127(d) (2012).  The Rule of Two argument is presented in a section of plaintiff's motion titled "The Rule of Two was Satisfied," which is not easily deciphered.  ECF No. 29 at 12-13.  The court begins with the text of the statute.

The Rule of Two states that

> a contracting officer of the Department [of Veterans Affairs] shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans or small business concerns owned and controlled by veterans with service-connected disabilities if the contracting officer has a reasonable expectation that two or more small business concerns owned and controlled by veterans or small business concerns owned and controlled by veterans with service-connected disabilities will submit offers and that the award can be made at a fair and reasonable price that offers best value to the United States.

38 U.S.C. § 8127(d).  As interpreted by the Supreme Court of the United States, to restrict competition for the benefit of veteran-owned businesses, "the contracting officer must reasonably expect that at least two of these businesses will submit offers and that 'the award can be made at a fair and reasonable price that offers best value to the United States.'" Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1973-74 (2016) (quoting 38 U.S.C. § 8127(d)).  For the VA, the Rule of Two is a necessary threshold

---

[3]   Plaintiff also presents a cursory assertion that SafeGuard's proposal was not responsive to the solicitation because its price was not quoted "per [shredding] bin." ECF No. 29 at 19 (citing ECF No. 11 at 407).  Neither of plaintiff's briefs develop this bare assertion into a persuasive argument.  Plaintiff has failed to show that SafeGuard's proposal should have been rejected because it was not responsive to the solicitation.

inquiry for its procurements. Id. at 1977 ("[B]efore contracting with a non-veteran owned business, the Department must first apply the Rule of Two.").

It follows, then, that the Rule of Two is satisfied, for a set-aside procurement restricted to SDVOSBs, if the VA's contracting officer should reasonably expect two or more SDVOSBs to compete, and should reasonably expect that contract award to one of these SDVOSBs can be made at a fair and reasonable price that offers best value to the United States. Id. at 1973-74. Plaintiff offers its own gloss on the Rule of Two: "'[A] contracting officer of the Department shall award contracts on the basis of competition restricted to small business concerns owned and controlled by veterans if the contracting officer has a reasonable expectation that' (1) two or more small business concerns owned and controlled by veterans will submit offers; and that (2) the award can be made at a fair and reasonable price that offers best value to the United States." ECF No. 29 at 12 (quoting 38 U.S.C. § 8127(d)) (alteration in original). Plaintiff, relying on its emphasis on the "shall award" language, concludes that "[a] plain reading of the statute instructs that the contracting officer shall award if he or she has a reasonable expectation that the two above criteria will be satisfied." Id. at 13. It was not clear to the court, from these passages in plaintiff's opening brief, how Land Shark's gloss on the Rule of Two differed from the precedent of Kingdomware.

Plaintiff's reply brief presents a clearer statement of plaintiff's proposed interpretation of the Rule of Two. Plaintiff states that "if the VA can award to an SDVOSB or VOSB, then it must." ECF No. 33 at 11 (citing 38 U.S.C. § 8127(d); Kingdomware, 136 S. Ct. at 1977). Plaintiff's interpretation of the Rule of Two follows neither Kingdomware nor the statutory language.

Plaintiff's argument implies that because section 8127(d) contains an instruction that the contracting officer "shall award" to veteran-owned businesses, the contracting officer is obliged to award to a SDVOSB whenever such an award is possible. Id. (citing 38 U.S.C. § 8127(d)). Plaintiff's argument ignores the construction of the Rule of Two, where award to a veteran-owned business shall be made if the dual conditions for a procurement set-aside are met: specifically, that two or more veteran-owned businesses are reasonably expected to compete, and that the price of the award is expected to be fair, reasonable, and providing best value to the United States. 38 U.S.C. § 8127(d)); Kingdomware, 136 S. Ct. at 1973-74.

When viewed through the lens of the precedent supplied in Kingdomware, the results of the VA's Rule of Two inquiry did not compel the VA to restrict this competition to SDVOSBS or VOSBs. As the court found in its prior ruling in this case, "the VA in this procurement conducted a Rule of Two analysis, as required by Kingdomware, but the VA did not find that this procurement could be entirely set aside for veteran-owned businesses." ECF No. 26 at 11 (citing ECF No. 11 at 345, 620). Plaintiff argues, nonetheless, that the market research conducted by the VA showed that two or more veteran-owned businesses would be reasonably expected to compete for this

contract, and that this procurement should have been restricted to veteran-owned businesses. ECF No. 29 at 14 (citing ECF No. 11 at 192, 276).

Defendant contends that the market research conducted by the VA showed that there was no reasonable expectation that two or more veteran-owned businesses would compete for this contract, and notes that only one veteran-owned business, Land Shark, submitted an offer. ECF No. 32 at 18 (citing ECF No. 11 at 281-82, 620). The court agrees with the government that the Rule of Two was not satisfied, as supported by evidence in the AR, and that the VA complied with section 8127(d). Plaintiff's contention that the Rule of Two was "satisfied" in this procurement is neither accurate nor persuasive.

B.      Whether the Solicitation Was a 100% Set-Aside for SDVOSBs

Plaintiff's second argument questions whether this procurement was a 100% set-aside for SDVOSBs. ECF No. 29 at 7. In its prior opinion, the court found that this procurement was not a total set-aside for SDVOSBs. ECF No. 26 at 14. Plaintiff appears to disagree with the court's finding. See ECF No. 29 at 13 ("The Solicitation was an SDV[]OSB Set-aside.").

Plaintiff's arguments in this regard are not perfectly clear. On the one hand, plaintiff contends that the VA's decision to conduct this procurement as other than a total set-aside for SDVOSBs frustrated Congressional intent and violated the Rule of Two in section 8127(d). Id. at 14. As the court ruled in its prior opinion, however, this is not the forum to debate how veteran preferences should be reflected in statute. ECF No. 26 at 8-9. Further, the court finds no violation of section 8127(d)'s Rule of Two, as explained by Kingdomware, in this procurement. See supra. Thus, if plaintiff is arguing, more precisely, that this procurement should have been conducted as a total set-aside for SDVOSBs, as a matter of law, the court respectfully disagrees. See infra.

Plaintiff also appears to argue that the solicitation's inclusion of various contract provisions that are regularly utilized in 100% SDVOSB set-asides compelled the VA to conduct this procurement as a 100% SDVOSB set-aside. See ECF No. 29 at 13 ("These provisions, acting together, put SDVOSBs on notice that only SDVOSBs would be eligible for award . . . ."). The court disagrees. The tiers of preference set forth in the solicitation put offerors on notice that the procurement was not a total SDVOSB set-aside. ECF No. 26 at 2 (citing ECF No. 11 at 345). Further, if there was a conflict between the SDVOSB set-aside contract provisions in the solicitation and the cascading tiers of preference scheme noted in the solicitation, plaintiff could not wait until after award had been made to challenge the tiers of preference clearly set forth in the solicitation. See Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) ("We also hold that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid

protest action in the Court of Federal Claims."). Plaintiff's attempt to reform the solicitation into a total SDVOSB set-aside is unavailing.

### C. Whether the Scheme of Cascading Tiers of Preference Is Illegal

Plaintiff's third argument attacks the structure of the procurement, specifically, the cascading tiers of preference scheme set forth in the solicitation. ECF No. 29 at 13-14. As in the prior rounds of briefing in this case, plaintiff contends that the VA's cascading tiers of preference scheme, used in this solicitation and in other procurements, is illegal. ECF No. 33 at 9-10. But plaintiff has waived this late-raised argument. Blue & Gold Fleet, 492 F.3d at 1313. Even if the argument were not waived, the court reaffirms its prior holding that the VA's cascading tiers of preference scheme, as applied in this procurement, does not offend either Kingdomware or section 8127(d). ECF No. 26 at 11-12. Further, the "court sees no violation of applicable procurement regulations which govern SDVOSB set-asides in the VA's award to SafeGuard." Id. at 14. None of plaintiff's arguments persuade the court that the cascading tiers of preference scheme applied by the VA in this procurement was illegal.

Plaintiff also contends that there is no statutory or regulatory support for the cascading tiers of preference scheme in this solicitation. ECF No. 33 at 9. According to plaintiff, the cascading tiers of preference scheme is an "illegal policy." ECF No. 29 at 7 n.1. The court must agree with the government that, first, this argument is waived under Blue & Gold Fleet, and that, second, plaintiff has failed to show how the cascading tiers of preference scheme is in conflict with the Rule of Two or any other procurement laws. ECF No. 34 at 7.

### D. Whether a Substantive Price Reasonableness Analysis of Proposals Was Permitted by Law

Plaintiff's fourth argument focuses on the price reasonableness analysis conducted by the VA which found that Land Shark's prices were not reasonable. ECF No. 29 at 15-17. Plaintiff argues that the VA was not permitted by applicable procurement regulations to conduct a substantive price reasonableness analysis of Land Shark's proposal. Id. According to plaintiff, because Land Shark's FSS prices had already been found to be reasonable by the General Services Administration, "the VA's analysis of fair and reasonable pricing should have stopped at this point." Id. at 17 (citing FAR 8.404(d), 48 C.F.R. § 8.404(d) (2017)).[4] The court examined the regulatory restrictions placed on the VA by FAR 8.404(d) and other procurement regulations in its earlier opinion. See ECF No. 26 at 9-10, 13-14. The court found nothing in FAR 8.404(d) or FAR 8.405-2(d) that forbids the VA from ensuring that a SDVOSB's prices are fair and reasonable before

---

[4] All citations to the Federal Acquisition Regulation (FAR) in this opinion are to the 2017 version of Title 48 of the Code of Federal Regulations.

awarding a contract to a SDVOSB.  Id. at 9-10.  Plaintiff's arguments in this round of briefing do not disturb that analysis.

Indeed, plaintiff's contention that the FAR precludes the VA from conducting a price reasonableness analysis of a SDVOSB's FSS prices falters because it is based on plaintiff's imperfect gloss on section 8127(d):

> [W]hen the contracting officer determines that an SDVOSB's offered price is not fair and reasonable, he or she is by extension relying on the one exception [in section 8127(d)] to awarding to an SDVOSB and stating that to award the contract would be illegal.

ECF No. 33 at 11.  The Rule of Two contains no such pronouncement.  The Rule of Two governs the VA's decision to set aside a procurement for SDVOSBs.  Neither section 8127(d), nor Kingdomware, directly addresses the question of how the VA is to ensure that a contract award to a SDVOSB, participating in a cascading tiers of preference procurement, is made at a fair and reasonable price.  ECF No. 26 at 8.  In the court's view, the Rule of Two in section 8127(d) cannot be extended to govern the VA's price analyses in the manner plaintiff proposes here.

The solicitation informed offerors that the VA would proceed to a lower preference tier "[i]f an award . . . cannot be made at the first tier."  ECF No. 11 at 345.  Thus, both the FAR provisions relied upon by plaintiff, and the solicitation's terms, permitted the VA to ensure that a SDVOSB's prices were fair and reasonable before awarding this shredding contract to a SDVOSB.  Plaintiff's contention that the VA was required by the Rule of Two to award this contract to Land Shark, even though it found that Land Shark's evaluated price was not reasonable, is unpersuasive.

> E.  Whether the Solicitation's Limitation on Subcontracting Barred Award to SafeGuard

Plaintiff's final protest ground is that the agency's responsibility determination regarding SafeGuard was arbitrary and capricious, in light of SafeGuard's facial violation of the limitations on subcontracting applicable in this procurement.  See ECF No. 29 at 8 ("Safeguard's proposal makes it facially obvious that it cannot comply with the limitations in subcontracting.") (citing 13 C.F.R. § 125.6 (2017)); see also id. at 18 ("It is clear from the record that the Contracting Officer failed to do an adequate responsibility determination . . . ."); ECF No. 33 at 13 ("Plaintiff is not advancing in[n]uendo or conjecture, but rather solid data that indicates Safeguard has no ability to self-perform and no ability to comply with the Limitations in Subcontracting.").  Plaintiff's array of facts, however, which is meant to show that SafeGuard is incapable of performing the contract in accordance with section 125.6, is unconvincing.  See Excel Mfg., Ltd. v. United States, 111 Fed. Cl. 800, 811 (2013) (refusing to invalidate a contract award because the protestor's conjecture as to the awardee's future violations of the limitations

on subcontracting was not sufficiently reliable). Here, the agency properly relied on SafeGuard's de facto promise to comply with 13 C.F.R. § 125.6 and its limitations on subcontracting, as applicable. Excel, 111 Fed. Cl. at 811.

The court agrees with defendant that plaintiff has not shown that the agency's responsibility determination was arbitrary or capricious. ECF No. 32 at 25. "[T]here is nothing on the face of either SafeGuard's or Land Shark's quotes that should have le[]d the VA to conclude that either company could not or would not comply with the limitations on subcontracting—both quotes were technically acceptable." Id. Plaintiff's final protest ground is unpersuasive.

F.  Permanent Injunctive Relief Not Warranted

Plaintiff has not succeeded on the merits of its protest. "Because proving success on the merits is a necessary element for a permanent injunction," Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 999 (Fed. Cir. 2018) (footnote omitted), no injunctive relief is warranted in this case. This protest must be dismissed.

IV.  Conclusion

For the reasons explained above, plaintiff has failed to carry its burden, but defendant has. Accordingly,

(1) Plaintiff's motion for judgment on the AR, ECF No. 29, is **DENIED**;

(2) Defendant's cross-motion for judgment on the AR, ECF No. 32, is **GRANTED**;

(3) The clerk's office is directed to **ENTER** final judgment for defendant, **DISMISSING** plaintiff's complaint, with prejudice; and,

(4) On or before **October 31, 2019**, the parties shall **CONFER** and **FILE** a **notice** of filing, attaching a proposed redacted version of this opinion, with any material deemed proprietary blacked out, so that a copy of the opinion can then be made available in the public record of this matter.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge